**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| **C.L., AN INDIVIDUAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Case No. 8:25-CV-04291** |
| **v.** | ) | |
| | ) | |
| **ESA P PORTFOLIO MD LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS ESA P PORTFOLIO MD LLC AND ESA MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC (collectively "ESA") pursuant to Fed. R. Civ. Pro. 12(b), hereby file this Memorandum in support of their Motion to Dismiss Plaintiff's Complaint, showing the Court as follows:

## I.

## INTRODUCTION

Plaintiff brings the present action under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), alleging that, on various occasions between 2015 and 2017, she was trafficked at the ESA hotel located at 205 Professional Dr., Gaithersburg, MD 20879 (the "Subject Hotel"). Plaintiff's single "beneficiary claim" against ESA, however, should be dismissed, in whole or in part, for several reasons.

Much of Plaintiff's claim is based upon incidents which occurred prior to December 30, 2015, and, thus, fall outside of the TVPRA's ten-year limitations period. Accordingly, any claim or portion of claim arising out of those events should be dismissed as untimely. In addition,

Plaintiff's claim is deficiently plead and should be dismissed in its entirety. To properly state a claim under the TVPRA, the Plaintiff must allege that ESA knowingly benefited from participation in a venture that it knew (or should have known) violated the TVPRA as to the Plaintiff. Here, Plaintiff's allegations fall short as to ESA's ***participation in a venture*** and ESA's ***constructive knowledge***. As to the former, Plaintiff fails to demonstrate any relationship between ESA and Plaintiff's trafficker, let alone the continual relationship or tacit agreement that the participation in a venture element requires. Regarding the latter, while her Complaint might establish constructive knowledge of Plaintiff's involvement in commercial sex, it fails to demonstrate that ESA knew or should have known that Plaintiff was ***made*** to engage in commercial sex. In fact, Plaintiff contends that, at the time she was engaged in commercial sex at the subject Hotel, even she did not perceive herself to be a trafficking victim, which is a tacit admission that Plaintiff was willingly participating in prostitution (or, at the very least, would have appeared as a willing participant to any outside observer). For these reasons, and others outlined below, ESA respectfully requests that Plaintiff's Complaint be dismissed.

**II.**

**ARGUMENT**

***A. The Untimely Portions of Plaintiff's Claim Should Be Dismissed.***

Plaintiff contends that she was trafficked at the Subject Hotel from 2015 through 2017. ***Doc. 1***, ¶ 12. She does not specifically state when in 2015 her trafficking began, when in 2017 it ended, and she does not identify the particular dates during this 2015 – 2017 timeframe that she stayed at and/or was trafficked on the premises. Plaintiff filed her Complaint on December 30, 2025. ***Id.*** However, the statute of limitations ("SOL") for civil actions brought under the

TVPRA is ten (10) years. 18 U.S.C. § 1595(c)(1).[1] Accordingly, the portion of Plaintiff's claim that relates trafficking which occurred on or before December 30, 2015, is untimely. Even though Plaintiff contends that some of ESA's conduct and some portion of her alleged trafficking occurred within the limitations period, her claim related to trafficking which occurred ***prior*** to December 30, 2015, remains barred. *See* ***Christina T. v. Bellagio LLC***, 2025 U.S. dist. LEXIS 205896, *7 (D. Nev. Oct. 17, 2025); ***Doe v. Hilton Domestic Operating Co.*** (hereinafter "Doe Alaska), 2025 U.S. Dist. LEXIS 229841, *9-10 (Dist. Alaska Nov. 21, 2025); ***H.G. v. Inter-Continental Hotels Corp.***, 489 F.Supp.3d 697, 710 (fn 7) (E.D. Mich. 2020); ***Lundstrom v. Choice Hotels International, Inc.***, 2021 U.S. Dist. LEXIS 228651, at *32 (D. Colo. Nov. 30, 2021); ***K.A. v. 26th St. Hosp.***, 2024 U.S. Dist. LEXIS 87132, at *22 (D.N.D. Apr. 15, 2024) (same).

Anticipating that ESA would raise the SOL and seek dismissal of her untimely claims, Plaintiff has alleged that the SOL is tolled for the following three reasons:

- The Discovery Rule – Plaintiff contends that, because she was "under the coercion and control of her trafficker" through at least 2017, she was unable to discover her injury or the legal cause of her injury. ***Doc. 1***, ¶¶ 67-70,

- Equitable Tolling – Plaintiff alleges that, "[w]hile under the control of her trafficker through 2017", she did not have the freedom to investigate her claims or hire counsel, but, once her trafficker's control ended, she "diligently pursued her claims and timely sought legal representation." ***Id.***, ¶¶ 71-73.

- Continuing Violation Doctrine – Plaintiff contends that, because the lawsuit arises "out of a pattern of continuous and ongoing tortious conduct" which continued through 2017, the Continuing Violation Doctrine tolls the SOL through 2017. ***Id.***, ¶¶ 74-76.

Each of these contentions are addressed, in order, below.

1. <u>The Discovery Rule is inapplicable herein.</u>

[1] A different SOL applies where the alleged trafficking took place when the plaintiff was a minor, but, the Plaintiff herein makes no such allegation.

A federal claim arises "when it 'accrues,' i.e., when it 'comes into existence … or in other words, when it is 'complete and present.'" ***J.M. v. Red Roof Franchising, LLC***, 2025 U.S. Dist. LEXIS 161980 (E.D. Cal. August 19, 2025) (punctuation and internal citations omitted). The Discovery Rule (sometimes referred to as the Delayed Discovery Doctrine), when applicable, "delays the start of the limitations period 'to preserve the claims of victims who do not know [that] they [have been] injured and who reasonably do not inquire as to any injury.'" ***Doe K.R. v. Choice Hotels***, 2025 U.S. Dist. LEXIS 235336, *25 (M.D. Fla. Dec. 3, 2025) (*citing* ***Gabelli v. Sec. Exch. Comm.***, 568 U.S. 442, 449-50 (2013)).

Here, Plaintiff invokes the Discovery Rule and alleges that her claims did not accrue until years after her trafficking ended, when she was finally "in a position to discover the legal cause of her injury" and "learned of the civil remedy available under 18 U.S.C. § 1595 …" ***Doc. 1***, ¶¶ 69-70. However, the Discovery Rule "is concerned with whether Plaintiff knew the facts accompanying her injury, not whether she understood that those facts gave rise to a cause of action." ***Doe K.R.***, 2025 U.S. Dist. LEXIS 235336, *25 (citing ***Barnes v. Compass Bank***, 568 F.App'x 743, 744 (11th Cir. 2014)). Accordingly, when a plaintiff possesses "personal knowledge of the facts supporting her claims", the Discovery Rule does not apply. ***Id.*** (*citing* ***Day v. City of Philadelphia***, 1995 U.S. Dist. LEXIS 6679, *1 (E.D. Pa. May 18, 1995). Here, Plaintiff certainly would have known the facts which caused her to engage in commercial sex and, thus, her claims accrued at the time of her injury.

2. Plaintiff has failed to properly plead Equitable Tolling.

"To be entitled to equitable tolling, [a plaintiff] must show (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." ***Lawrence v. Florida***, 549 U.S,. 327, 336 (2007) (internal cite

omitted). Moreover, to meet the diligence requirement, a plaintiff must show "that [she] has been reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing [her] claim in federal court." ***Smith v. Davis***, 953 F.3d 582, 598-99 (9th Cir. 2020); *see also* ***Sherrod v. Board of St. Lucie County***, 635 F.App'x 667, 673 (11th Cir. 2015) (equitable tolling requires a showing that the extraordinary circumstances "made it impossible" to file a claim "at any point within" the limitations period). A plaintiff "must allege with specificity the steps [she] took to diligently pursue her federal claims." ***Yang v. Archuleta***, 525 F.3d 925, 930 (10th Cir. 2008).

Here, Plaintiff's allegations as to the "extraordinary circumstances" she faced and how they prevented her from pursuing her rights are conclusory in nature. ***Doc. 1***, ¶¶ 71-72. And, while she makes the bald assertion that she "diligently pursued her claims" upon "learning of her legal rights" (***id.***, ¶ 73), she has offered no specific facts to explain ***how*** she has acted diligently since her trafficking ended. Conclusory proclamations of diligence are simply not enough. ***C.B. v. Rashid***, 2025 U.S. Dist. LEXIS 122420, *11-12 (D. Nev. June 26, 2025). For example, in ***C.B.***, the plaintiff pled that, after contacting her counsel she finally believed that someone in the legal system might "take her seriously" and, as a result, she "diligently participated in the preparation of her complaint, which was filed less than a week later." ***Id.*** The Nevada District Court noted, however, that the plaintiff failed include any allegations of diligence to carry her from the time when each "cause of action arose against the Defendants" to the time she retained her attorneys and worked toward her complaint. ***Id.*** The absence of any specific allegations required a finding that the plaintiff "ha[d] not plausibly alleged that equitable tolling is applicable to her." ***Id.***

In ***Doe K.R.***, the plaintiff's trafficking ended on May 29, 2013, and she filed suit on May 31, 2023. ***Doe K.R.***, 2025 U.S. Dist. LEXIS 235336, *13. Plaintiff alleged, however, that because she "struggled to understand her relationship with [her trafficker] … and did not fully comprehend her status as a victim for some time", her TVPRA claim was equitably tolled. ***Id.***, at *21. The Florida District Court ultimately held, however, that, even if the alleged circumstances interfered with her ability to pursue her legal rights, Equitable Tolling requires a showing that the impediment "made it impossible for [her] to file [a claim] … ***at any point within the limitations period***." ***Id.***, at *23 (*citing* ***Sherrod***, 635 F.App'x at 673) (emphasis added). Since Plaintiff failed to show how the purported extraordinary circumstances prevented her from initiating suit during the years that passed prior to expiration of the SOL, she "ha[d] not presented sufficient facts to warrant equitable tolling …" ***Id.***; *see also* ***Cada v. Baxter Healthcare Corp.***, 920 F.2d 446, 452 (7th Cir. 1990); ***Valencia v. E*Trade Securities, LLC***, 2021 U.S. Dist. LEXIS 260964, *10-11 (N.D. Ga. Oct. 22, 2021); ***Rashid v. Mukasey***, 533 F.3d 127, 132-33 (2nd Cir. 2008); ***Smith v. Davis***, 953 F.3d 582, 598-99 (9th Cir. 2020); ***Abena v. Metropolitan Life Ins. Co.***, 544 F.3d 880, 884 (7th Cir. 2008).

Plaintiff's allegations herein are likewise deficient. Plaintiff claims that she was still under the control of her trafficker as of December 30, 2015, but that control ended sometime in 2017. Plaintiff's Complaint is devoid of any facts explaining how she diligently pursued her rights over the following ***eight years*** and up until she filed her lawsuit in 2025. Accordingly, Equitable Tolling is unavailable.

3. The Continuing Violations Doctrine is inapplicable to TVPRA claims.

Generally speaking, the Continuing Violations Doctrine ("CVD") allows a plaintiff to seek relief for events outside the limitations period, "as long as the last act evidencing the

continuing practice falls within the limitations period." ***Doe v. G6 Hosp., LLC*** (hereinafter "Doe v. G6"), 2025 U.S. Dist. LEXIS 76546, *9-10 (W.D. Wash. April 22, 2025) (*citing* ***Bird v. Dep't of Human Servs.***, 935 F.3d 738, 746 (9th Cir. 2019)). More specifically, however, the applicability of the CVD depends on whether the plaintiff's claim arises out of a pattern that gives rise to a cause of action ***or*** from discrete acts which, even though they may repeat, are individually actionable. *See* ***Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 114 (2002).

***Morgan*** was an employment discrimination case. There, the Supreme Court differentiated hostile work environment claims from claims arising out of discrete acts of discrimination. The "very nature" of hostile environment claims involves repeated conduct which is what ultimately provides notice and subjects the employer to liability; thus, the "unlawful employment practice" at issue does not occur on any one day. ***Morgan***, 536 U.S. at 115. Rather, "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." ***Id.*** It is in these sorts of cases that the Supreme Court found the CVD applicable. Conversely, the Supreme Court found the CVD did not apply to claims based on discrete acts, such as "termination, failure to promote, denial of transfer, or refusal to hire". ***Id.***, p. 114. Such acts were "easy to identify" and each incident "constitutes a separate actionable 'unlawful employment practice'", with the applicable SOL applying thereto. ***Id.***

Various District Courts within the Ninth Circuit have held that the Supreme Court's directive in ***Morgan*** proscribes the application of the CVD in TVPRA cases. For example, the Washington District Court noted that, in the days before ***Morgan***, the Ninth Circuit applied the CVD in two different scenarios: "first to a series of related acts directed at the plaintiff, one or more of which fell within the limitations period and second, to the maintenance of an unlawful

system, policy, or practice to which the plaintiff was subjected that extended both before and during the limitations period." ***Doe v. G6***, 2025 U.S. Dist. LEXIS 76546, *9-10 (*citing* ***Bird***, 935 at 746-47). The ***Morgan*** opinion, however, rejected the "serial acts" theory, "holding that where discrete acts cause discrete harm, the plaintiff must bring suit in a timely manner and may recover only for those acts occurring within the limitations period." ***Id.*** (*citing* ***Nat'l R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 114 (2002)).

Accordingly, even when (as here) a plaintiff claims that she is invoking the CVD "because this lawsuit arises out of pattern of continuous and ongoing tortious conduct by [the Defendants]" (***Doc. 1***, ¶ 74), the CVD is inapplicable in TVPRA cases:

> The Court acknowledges that a hotelier's knowledge (or reckless disregard) of the fact that its hotel rooms are being used for sex trafficking and/or its knowing participation in a venture engaged in sex trafficking may develop through a series of acts and over a period of time. But once the requisite knowledge exists, each act of "harboring" or each receipt of a benefit from the sex trafficking venture is actionable under 18 U.S.C. § 1591(a). That the unlawful conduct is repeated does not stall the running of the limitations period or make all subsequent trafficking episodes part of a single illegal act. Each discrete, actionable act starts a new clock for filing a lawsuit …

***Id.*** (*citing* ***Morgan***, 536 U.S. at 114; ***Bird***, 935 F.3d at 747); *see also* ***Doe Alaska***, 2025 U.S. Dist. LEXIS 229841, *5; ***Marcy C. v MGM Resorts Int'l***, 2025 U.S. Dist. LEXIS 224307, *3 (D. Nev. Nov. 13, 2025); ***Doe v. Six Continents Hotels Inc.***, 2025 U.S. Dist. LEXIS 122938, *16 (C.D. Cal. June 26, 2025).[2] Here, because each incident of trafficking which Plaintiff contends occurred in 2015 would give rise to a discrete claim, the CVD is inapplicable.

---

[2] ESA acknowledges that several District Courts have, subsequent to the Supreme Court's decision in ***Morgan***, found the CVD applicable to claims brought under the TVPRA. *See, e.g.*, ***Doe v. Hilton Domestic Operating Co.***, 2025 U.S. Dist. LEXIS 226548, *7-8 (D. Mass. Nov. 18, 2025) (collecting cases). However, those opinions do not appear to have considered the ***Morgan*** opinion or its precedent.

***B. Plaintiff's "Beneficiary" Claim is Deficient, Because She does not Allege Facts Sufficient to Demonstrate that ESA Participated in a Venture with Her Trafficker.***

Under 18 U.S.C. § 1595(a), "[a]n individual who is a victim of a violation of [the criminal provisions of the TVPRA] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the] chapter)." As the Eleventh Circuit Court of Appeals established in ***Doe #1 v. Red Roof Inns, Inc.***,

> to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

21 F.4th 714, 726 (11th Cir. 2021).

Participation in a venture has been further defined as "taking part in a common undertaking or enterprise involving risk and potential profit." ***Doe #1 v. Red Roof Inns, Inc.***, 21 F.4th 714, 725-26 (11th Cir. 2021) (hereinafter "***Red Roof***"). Participation in a venture requires a showing that the defendant and the trafficker were somehow "working together 'to force [plaintiff] to serve their business objective.'" ***K.H. v. Riti, Inc.***, 2024 U.S. App. LEXIS 3127, *10 (11th Cir. February 9, 2024) (*citing* ***Ricchio v. McLean***, 853 F.3d 553, 555 (1st Cir. 2024)); *see also* ***J.K. v. Ramada Worldwide, Inc.***, 2023 U.S. Dist. LEXIS 152941, *5-7 (N.D. Ga. August 30, 2023).[3] While participation in a venture does not require the defendant to have

[3] Allegations that would potentially satisfy the "participation in a venture" prong include evidence that the trafficker and defendant spoke openly about "getting this thing going again" (***Ricchio***, 853 F.3d at 555), allegations that defendant continually renewed its business relationship for two distinct periods of time, separated by 14 months,

criminally violated the statute, it is important to realize that "observing something is not the same as participating in it." ***Red Roof***, 21 F.4th at 727. Allegations that a defendant simply benefitted from renting a hotel room while the defendant should have been aware of trafficking are not sufficient to satisfy this element; rather, such contentions are simply a re-alleging of elements one and three. *See* ***G.W. v. Northbrook Industries, Inc.,*** 739 F.Supp.3d 1243, 1250 (N.D. Ga. 2024) ("It is not enough for the purposes of the participation prong that [defendant] knew of should have known that sex trafficking was occurring on its property. For participation liability to attach under §1595(a), Plaintiff must show more than [defendant's] knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers."). A "plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers." ***Id.***

Courts in other circuits have defined this element as requiring allegations that the defendant rendered "culpable assistance to a wrongdoer," manifesting "a desire to promote the wrongful venture's success." ***G.G. v. Salesforce.com, Inc.***, 76 F.4th 544, 559 (7th Cir. 2023). Such "culpable assistance" can be sufficiently alleged by showing "a continuous business relationship" sufficient to establish a "tacit agreement" between the defendant and the trafficker. ***Id.***; ***see also J.B. v. G6 Hospitality, LLC***, 2020 U.S. Dist. LEXIS 151213, *26 (N.D. Cal. August 20, 2020) ("[I]n the absence of direct association," participation in a venture "required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.'").

---

after being made aware of trafficking (***J.C. v. I Shri Khodiyar***, LLC, 624 F.Supp.3d 1307, 1318 (N.D. Ga. 2022)), and allegations that hotel staff zip-tied the strike bar on a hotel exit door open so those wishing to buy sex could enter and exit (***J.K.***, 2023 U.S. Dist. LEXIS 152941 at *8).

Here, Plaintiff has not alleged any of that. Plaintiff contends that she was trafficked at the ESA Hotel from sometime in 2015 through sometime in 2017, but she does not say how often or for how long. Perhaps more importantly, however, Plaintiff does not make any contention that her trafficker had any dealings with ESA. A close review of Plaintiff's allegations reveals that she never claims that her trafficker ever colluded with – or even interacted with – ESA staff. Indeed, Plaintiff does not even clearly assert that her trafficker rented the rooms at the Subject Hotel, specifying instead that the rooms may have been rented "at the direction of her trafficker". ***Doc. 1***, ¶¶ 24, 25, 42, 43, 44, 45, 50, 51. While Plaintiff alleges that ***she*** interacted with Hotel staff, she makes no such averment regarding her trafficker. ***Id.***, ¶ 58. Suffice it to say, ESA cannot participate in a venture with, have a continuous business relationship with, and/or enter into a tacit agreement with someone it has not met and/or has not done business with. Thus, Plaintiff's Complaint is devoid of any allegations "connecting the dots" and establishing a relationship between Plaintiff's trafficker and ESA, and her claim must be dismissed.[4]

### ***C. Plaintiff's "Beneficiary" Claim is Deficient, Because She does not Properly Alleged that ESA Possessed Constructive Knowledge of Her Trafficking.***

Turning to the final element of Plaintiffs' beneficiary claim, it must be recognized that the TVPRA does not address commercial sex generally – it only addresses sex trafficking. *See generally*, 18 U.S.C. §§ 1591, 1595. And, since prostitution (or commercial sex in a general) is ***not*** synonymous with trafficking, notice of one does not constitute notice of the

---

[4] ESA acknowledges that Plaintiff alleges, on information and belief, that her trafficker befriended and/or compensated Hotel staff to act as a lookout for police and that she believes this is why one of her "johns" was someone she "perceived to be a staff member." ***Doc. 1***, ¶ 33. However, allegations made on information and belief must be supported by some allegation of fact, otherwise they "veer away from supporting plausible inferences" and do not show a "plausible" claim for relief. ***Va. Transformer Corp. v. Ebbert***, 2019 U.S. Dist. LEXIS 52441, *10 (W.D. Va. March 28, 2019). Plaintiff makes no direct, factual allegations that anyone from ESA ever sounded some alarm or alerted her and/or her trafficker as to the presence of police, or even that she witnessed or overheard her trafficker interacting with the person she "perceived" to be a Hotel employee.

other.[5] What the law requires is that Plaintiff set forth "facts from which this Court can reasonably infer [] that Defendant knew or should have known that the trafficker used force, threats or force, fraud, coercion, or a combination thereof to cause Plaintiff[s] to engage in commercial sex" at the property. ***A.B. v. Interstate Mgmt. Co., LLC***, 746 F.Supp.3d 997, 1010 (D. Or. 2024); see also ***B.J. v. G6 Hospitality, LLC***, 2023 U.S. Dist. LEXIS 88180, *17-18 (N.D. Cal. May 19, 2023); ***E.S. v. Best Western Int'l, Inc.***, 510 F.Supp.3d 420, 428 (N.D. Tex. 2021).[6]

In her Complaint, Plaintiff makes several allegations of activity that, even if ESA had observed it, would be insufficient to provide constructive notice of trafficking – as opposed to prostitution. For example, Plaintiff claims that there was substantial foot traffic in and out of her room, that she was often under the influence of drugs, that she would solicit potential buyers in common areas of the Hotel, that her room "exhibited signs of sex work", and that there were other, observable "red flags". ***Doc. 1***, ¶¶ 54, 56. None of these would reveal that Plaintiff was being ***made*** to engage in commercial sex.

Admittedly, Plaintiff's Complaint does include a few allegations that she was abused by her trafficker, but those are insufficient for two reasons. First, Plaintiff fails to allege that any Hotel Staff actually witnessed her being mistreated. While Plaintiff states, for example,

---

[5] ***A.B. v. Extended Stay America, Inc.***, 2023 U.S. Dist. LEXIS 162568, *15 (W.D. Wash. Sept. 13, 2023); ***Doe 1 v. Red Roof Inns, Inc.***, 2020 U.S. Dist. LEXIS 67139, *9 (N.D. Ga. Apr. 13, 2020); ***A.B. v. Interstate Mgmt. Co., LLC***, 484 F.Supp.3d 921 *6 (D. Or. Aug. 22, 2024); ***B.J. v. G6 Hospitality, LLC***, 2023 U.S. Dist. LEXIS 88180, *17 (N.D. Cal. May 19, 2023); ***Doe (L.M.) v. 42 Hotel Raliegh, LLC***, 717 F.Supp.3d 464, 470 (E.D.N.C. 2024).

[6] A defendant's knowledge of the plaintiff's trafficking is the cornerstone of liability under the TVPRA. Contrary to Plaintiff's assertions, the TVPRA does not require defendants to investigate or affirmatively stop sex trafficking. ***Jane Doe (C.T.K.) v. Choice Hotels Int'l, Inc.***, 2026 U.S. Dist. LEXIS 5045, *20 (E.D. Wisc. Jan. 12, 2026) (noting that "[h]otels are not law enforcement agencies" and the TVPRA does not require them to "monitor or surveil their guests" or "undertake and investigation to determine where sex trafficking or other illegal conduct, such as prostitution or drug dealing, are going on at the hotel."); ***B.M. v. Wyndham Hotels & Resorts, Inc.***, 2020 U.S. Dist. LEXIS 135494, *20 (N.D. Cal. July 30, 2020) ("To be clear, the Corut does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking."); ***A.B. Marriott Int'l, Inc.***, 455 F.Supp.3d 171, 182 (E.D. Pa. Apr. 22, 2020) (same).

that she walked around the Hotel grounds "with visible bruising" and that her trafficker "overtly assert[ed] control over [her] in common areas", Plaintiff does not explicitly allege that this abuse was ***actually seen*** by ESA employees. ***Id.*** Even with the sole, specific incident which Plaintiff mentions – an occasion when her trafficker pulled her hair in the lobby – Plaintiff claims only that it was "in view" of staff, stopping short of alleging that the event was actually observed. ***Id.***

Second, Plaintiff has admitted that, at the time she was engaged in commercial sex at the Hotel, even she did not consider herself to be a trafficking victim: "At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being 'trafficked' at the subject hotel or that she was a person 'trafficked,' much less that she was the 'victim' …" ***Id.***, ¶ 69. Plaintiff contends that it was only years later that she finally came to realize that she had been trafficked. ***Id.*** If taken as true (as it must be), this averment has dire implications for Plaintiff's claim – it means that Plaintiff was not, in fact, trafficked (and that ESA cannot be deemed to have constructive knowledge of trafficking which even Plaintiff somehow lacked).

As noted above, trafficking occurs when someone makes someone else engage in an act of commercial sex (*i.e.* sex in exchange for money) through force, threats of force, fraud, or coercion.[7] 18 U.S.C. § 1591(a). Someone who has commercial sex without being made to do so is not a trafficking victim. And, obviously, whether one takes part in commercial sex willingly or because they are compelled to do so depends on their belief ***at the time*** – not after they change their mind years later.

[7] "Coercion" is further defined as threat of serious harm or physical restraint or the abuse or threatened abuse of the law or legal process. 18 U.S.C. § 1591(e)(3).

Here, Plaintiff knew she was engaging in commercial sex at the subject Hotel, and, if she was doing so because of force, fraud, or coercion, she would have known that, too. However, if, as Plaintiff alleges, she did ***not*** know she was being forced to engage in commercial sex at the time it occurred, then her actions were not forced. Stated differently, if Plaintiff believed that her actions were voluntary, then they were voluntary. This means that Plaintiff was not a trafficking victim, which requires dismissal of her claim.[8]

In addition, even if we are to accept the argument that one can be caused to engage in commercial sex through nefarious methods even while incorrectly believing that she is acting of her own volition, Plaintiff's claim must nevertheless be dismissed. Any such argument concedes that the motivating factors which caused Plaintiff to take part in commercial sex were unknowable to her at the time. And, if the Plaintiff (who undeniably had far superior knowledge of the relationship between her and her alleged trafficker) did not possess constructive notice that she was being trafficked, how can such notice be imputed to ESA? After all, ESA is not alleged to have actually trafficked Plaintiff (*i.e.,* she does not claim that they forced, threatened, defrauded, or coerced her into commercial sex), nor does Plaintiff contend that ESA had some insight into her psyche that Plaintiff herself did not possess. Plaintiff has pled that, even though she knew ***all*** the facts surrounding the incidents at issue, she was unable to discern that she was being made to engage in commercial sex. Yet, she seeks to hold ESA liable, arguing that it was or should have been aware she was being trafficked, even though it was privy to, at best, a fraction of the facts known to her. Put simply, ESA could not have known that Plaintiff was being forced or coerced to have commercial sex if Plaintiff herself was unaware of it, and since she cannot establish this necessary element of her cause of action, her claim must be dismissed per Rule 12(b)(6).

---

[8] The civil remedy provided in 18 U.S.C. § 1595 is only available to someone who is a "victim" of trafficking.

**III.**

**CONCLUSION**

For the foregoing reasons, ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC respectfully request this Court enter an Order GRANTING their Rule 12(b)(6) Motion to Dismiss for failure to state a claim and DISMISSING Plaintiff's Complaint with prejudice.

Respectfully submitted,

___*/s/ Andrew Stephenson*________
Andrew T. Stephenson, Esq. (#26504)
Dillon A. Swensen, Esq. (#31347)
Franklin & Prokopik
The B&O Building
Two North Charles Street, Suite 600
Baltimore, Maryland 21201
Tel: (410) 230-3638
Fax: (410) 752-6868 (fax)
astephenson@fandpnet.com
dswensen@fandpnet.com
*Attorneys for ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC*