**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| C.L., AN INDIVIDUAL,<br><br>Plaintiff,<br><br>v.<br><br>ESA P PORTFOLIO MD LLC AND ESA MANAGEMENT, LLC,<br><br>Defendants. | Civil Case No. 8:25-CV-04291<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff C.L. respectfully files this opposition to the Motion to Dismiss filed by Defendants ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC (collectively "ESA"). [ECF No. 7]. For the reasons set forth herein, Plaintiff C.L. submits that Defendants' dismissal motion should be denied in its entirety.

## I. INTRODUCTION

The present lawsuit is a civil action in which Plaintiff C.L. alleges that, in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, she was sex trafficked at the Extended Stay America hotel located at 205 Professional Dr., Gaithersburg, MD 20879 (the "Subject Hotel"), owned by ESA P PORTFOLIO MD LLC's predecessor-in-interest and operated by ESA MANAGEMENT, LLC, between 2015 and 2017. [ECF No. 1 at ¶¶ 6, 12, 19].

The TVPRA provides sex-trafficking victims with a civil remedy against "the perpetrator" *or* "whoever knowingly benefits, financially or by receiving anything

of value from participation in a venture which that person knew or should have known has engaged in [sex trafficking].” 18 U.S.C. § 1595(a). Plaintiff does not allege that ESA directly perpetrated sex trafficking. Rather, she seeks relief under the civil beneficiary theory. [ECF No. 1 at ¶ 8].

Plaintiff's Complaint alleges a single count for violation of 18 U.S.C. § 1595 based on a deeply troubling factual record: two years of repeated room rentals to Plaintiff's trafficker by an operation whose own staff — including a manager — personally participated in Plaintiff's sexual exploitation. ESA's motion for dismissal on grounds of timeliness, lack of venture participation, and insufficient constructive knowledge allegations fails as a matter of law and on the face of the Complaint — and is in any event procedurally improper, having been filed after ESA's own Answer.

## II. LEGAL ARGUMENT

### A. Defendants Waived Their Rule 12(b)(6) Motion By Filing Their Answer First.

As a threshold matter, ESA's Rule 12(b)(6) motion is procedurally improper and must be denied because ESA filed its Answer to Plaintiff's Complaint — ECF No. 6 — before filing the instant Motion to Dismiss — ECF No. 7. The sequence of docket entries is unambiguous: the Answer preceded the Motion. Under the Federal Rules of Civil Procedure, a motion asserting a Rule 12(b) defense “must be made before pleading if a responsive pleading is allowed.” Fed. R. Civ. P. 12(b)

(emphasis added). By filing its Answer first, ESA irrevocably waived its right to bring a pre-answer Rule 12(b)(6) motion.

The rule is clear and unequivocal. Numerous courts have held that a 12(b)(6) motion filed after a responsive pleading is untimely and must be denied. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1093 n.35 (11th Cir. 2001) ("A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be made before a responsive pleading is filed."); *Soo Line L.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528-29 (8th Cir. 1991). Here, the motion was filed after the Answer. The waiver could not be clearer.

Once a defendant has filed an answer, the appropriate vehicle for challenging the sufficiency of a complaint is a motion for judgment on the pleadings under Rule 12(c) — not a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(c); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996). Although some courts exercise discretion to convert an untimely 12(b)(6) motion into a Rule 12(c) motion, the Court need not do so here. In any event, even if converted, Plaintiff's claims survive for all the reasons set forth below.

Because ESA filed its Answer (ECF No. 6) before its Motion to Dismiss (ECF No. 7), the Motion is untimely as a matter of law under Rule 12(b) and should be denied on that ground alone, without reaching the merits.

## B. The Standard of Review Favors Plaintiff.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges facts permitting "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not impose a probability requirement at the pleading stage. *Id.* at 678.

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## C. Plaintiff's Claim Is Not Time-Barred.

ESA's statute of limitations argument is premised on the false assumption that Plaintiff's trafficking claim is confined to events predating December 30, 2015. The Complaint expressly alleges trafficking "in 2015 through and inclusive of 2017." [ECF No. 1 at ¶¶ 6, 12, 19, 50-51]. Any trafficking occurring after December 30, 2015 — which encompasses the substantial majority of Plaintiff's two-year

ordeal — is indisputably timely. ESA's motion cannot dismiss the entire complaint on limitations grounds, and to the extent it seeks partial dismissal, that is a matter for summary judgment on a developed factual record, not a pleading-stage dismissal.

Moreover, even as to pre-December 30, 2015 events, dismissal is inappropriate because Plaintiff has plausibly alleged tolling on three independent grounds. [ECF No. 1 at ¶¶ 67-76].

**1. The Discovery Rule Preserves Plaintiff's Claims.**

Plaintiff's Complaint specifically alleges that at the time she was trafficked, she "did not know that she was the victim of human trafficking as that term is defined by law" and "did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended." [ECF No. 1 at ¶¶ 67-70]. These allegations directly reflect the psychological reality of coercive trafficking: her trafficker maintained control through "physical abuse, threats, psychological manipulation, and severely restricted her freedom," leaving Plaintiff without the information or capacity to understand her injuries and their legal causes. [ECF No. 1 at ¶ 67].

ESA argues that the discovery rule only tolls limitations when a victim does not know the *facts* underlying her claim — not when she simply lacks awareness of a legal remedy. But Plaintiff's Complaint goes beyond mere legal ignorance. She alleges she did not "did not know that she was the victim of human trafficking as that term is defined by law" and "did not discover and was not in a position to

discover the legal cause of her injury for years after her trafficking ended." This is precisely the type of injury-concealment the discovery rule is designed to address, particularly where coercive trafficking methods prevent a victim from recognizing the nature of her own victimization.

**2. Plaintiff Has Adequately Pleaded Equitable Tolling.**

As a threshold matter, the TVPRA's ten-year limitations period, 18 U.S.C. § 1595(c), is subject to equitable tolling. The Supreme Court has reaffirmed the "hornbook law" presumption that federal statutes of limitations are subject to equitable tolling unless Congress has clearly stated otherwise. *See Arellano v. McDonough*, 598 U.S. 1, 6-7 (2023). The TVPRA contains no such clear statement. Federal courts applying this presumption have held that equitable tolling is available in TVPRA civil actions. *See Doe v. G6 Hospitality Franchising LLC et al.*, No. 3:25-cv-00770, ECF No. 53 (N.D. Tex. 2025).

Plaintiff alleges that while under the control of her trafficker through 2017, she "did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights" and "could not have pursued her claims while under the active control of her trafficker despite the exercise of ordinary diligence." [ECF No. 1 at ¶ 72]. Upon learning of her legal rights, she "diligently pursued her claims and timely sought legal representation." [ECF No. 1 at ¶ 73]. These factual allegations plausibly establish extraordinary circumstances and diligence sufficient to survive a motion

to dismiss. Whether they are ultimately sufficient presents a factual inquiry not appropriate for Rule 12(b)(6).

ESA's cases criticizing conclusory tolling allegations are distinguishable. The psychological and physical coercion of a sex trafficker — which the Court must accept as true at this stage — constitutes extraordinary circumstances. The Complaint alleges specifically that Plaintiff was subjected to "physical abuse, threats, psychological manipulation" and that her "freedom" was "severely restricted." [ECF No. 1 at ¶ 67]. Unlike the plaintiffs in ESA's cited cases, Plaintiff does not simply assert a vague inability to act — she alleges the specific mechanisms by which her trafficker maintained control and prevented her from pursuing claims.

### 3. The Continuing Violations Doctrine Provides an Independent Basis to Preserve Pre-Limitations Claims.

Plaintiff alleges a continuous, multi-year pattern of trafficking at the Subject Hotel between 2015 and 2017. [ECF No. 1 at ¶¶ 74-76]. ESA relies primarily on Ninth Circuit authority for the proposition that the CVD is categorically unavailable in TVPRA cases. However, this is far from settled law. Multiple district courts have held that the CVD may apply to TVPRA claims. *See, e.g., Doe v. Hilton Domestic Operating Co.*, 2025 U.S. Dist. LEXIS 226548, *7-8 (D. Mass. Nov. 18, 2025) (collecting cases). This District has not categorically resolved the question, and the Court should decline to do so on a motion to dismiss. At a minimum, the

Court should deny dismissal of all claims relating to events within the limitations period and reserve tolling questions for summary judgment.

## D. Plaintiff Has Adequately Alleged ESA's Participation in a Venture.

The TVPRA's civil remedy imposes liability on whoever "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" a TVPRA violation. 18 U.S.C. § 1595(a). "Participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725-26 (11th Cir. 2021).

ESA's central argument on this element — that Plaintiff failed to allege any relationship between ESA and her trafficker — is refuted by the face of the Complaint.

First, and most critically, ESA Management's own staff directly participated in Plaintiff's sexual exploitation. The Complaint alleges that Plaintiff's trafficker "induced Plaintiff to have sex with ESA MANAGEMENT, LLC's staff member/employee by fraud, force and/or coercion; more specifically, an individual Plaintiff perceived to be a manager with whom she was forced to have sex approximately ten (10) times." [ECF No. 1 at ¶ 41]. She recalls this manager as "short and Black with light skin" who told her his name is "Craig." [*Id.*]. This allegation — that a named, specifically described ESA Management employee personally participated in Plaintiff's trafficking approximately ten times — is the

very definition of a venture between the trafficker and the hotel. ESA's motion brief does not engage with this allegation at all, which alone is fatal to its motion on this element.

Second, Plaintiff alleges that her trafficker befriended and/or compensated ESA Management staff members to act as police lookouts and informants. [ECF No. 1 at ¶ 33]. This allegation — of staff members actively compensated by the trafficker to protect the trafficking operation — goes directly to the "tacit agreement" and "continuous business relationship" standard. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023).

Furthermore, ESA's implicit effort to require Plaintiff to allege participation in a dedicated sex-trafficking venture — as opposed to any venture — is foreclosed by the plain text of the statute. As the Seventh Circuit has held, the text of Section 1595 "does not say 'sex-trafficking venture,' but only 'venture.'" *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 558 (7th Cir. 2023). Congress defined "venture" in § 1591 as "any group of two or more individuals associated in fact," without requiring criminal purpose, and it would be anomalous to impose a narrower definition in the civil liability provision. *Id.* A hotel operation — a commercial venture involving the renting of rooms, the provision of services, and the pursuit of revenue — squarely qualifies. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021).

Third, Plaintiff alleges multi-year, repeated commercial dealings between her trafficker and ESA through continuous room rentals at the Subject Hotel from 2015 through 2017. [ECF No. 1 at ¶¶ 24-25, 42-45, 48-51]. The Complaint further alleges that ESA benefited not only from room rentals but from Wi-Fi services used to advertise Plaintiff online. [ECF No. 1 at ¶¶ 29-30]. A "continuous business relationship" sufficient to establish a tacit agreement is well-established by these facts. *See J.B. v. G6 Hospitality, LLC*, 2020 U.S. Dist. LEXIS 151213, *26 (N.D. Cal. Aug. 20, 2020).

Fourth, the Complaint alleges that ESA P Portfolio MD Trust acted as co-operator and franchisee of the Subject Hotel, giving it contractual authority to control training, staffing, and security protocols. [ECF No. 1 at ¶¶ 20-22]. The knowledge of on-site staff — including "Craig" — is imputed to both ESA entities by virtue of their ownership, co-operator status, and operational control. [ECF No. 1 at ¶¶ 47, 55].

ESA's reliance on *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) is misplaced for a fundamental reason: that decision addressed TVPRA claims against *franchisors* who did not own or operate the hotels where trafficking occurred. As Judge Jordan emphasized in concurrence, the opinion addresses claims "against franchisors who do not operate or manage the hotels at which sex trafficking allegedly occurred," and that "similar claims against those who own, operate, or manage the hotels in question (e.g. franchisees) *would* withstand a Rule 12(b)(6) motion." *Id.* at 726 (Jordan, J., concurring) (emphasis in original). ESA P

Portfolio MD LLC and ESA Management, LLC are the owner and operator of the Subject Hotel — not a remote franchisor. They are precisely the type of defendant Judge Jordan identified as properly subject to § 1595 liability.

ESA's contention that it cannot be held to have participated in a venture with someone it "has not met" is contradicted by the Complaint's allegation that ESA Management's own employee — by name — participated directly in the trafficking of Plaintiff. "Observing something is not the same as participating in it," *Red Roof Inns*, 21 F.4th at 727 — but ESA did far more than observe. Its employee was an active participant.

**E. Plaintiff Has Plausibly Alleged That ESA Knew or Should Have Known of Her Trafficking.**

The TVPRA's constructive knowledge standard requires only that the defendant "knew or should have known" that the venture violated the TVPRA as to the plaintiff. 18 U.S.C. § 1595(a). This is an objective standard. Plaintiff's Complaint provides one of the most specific and detailed sets of constructive knowledge allegations to appear in TVPRA hotel litigation.

Courts have squarely rejected the argument that § 1595's constructive knowledge prong requires anything more than objective negligence. As one court held in rejecting the same contention ESA advances here: the statute "uses the words 'should have known,' and therefore invokes a negligence standard, not knowledge through willful blindness." *M.A. v. Shree Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019). Under that standard, a plaintiff "does not need

to prove reckless disregard under § 1595(a), only that the Defendants 'should have known' about the nature of the subject sex trafficking — and this does not require evidence of actual knowledge or conspiracy between the Defendants and the trafficker." *Id.* at 966. ESA's demand for something approaching actual knowledge or complicity is thus legally unfounded.

As to ESA Management, Plaintiff alleges staff witnessed the following observable red flags on a "daily basis" during her two-year trafficking at the Subject Hotel [ECF No. 1 at ¶¶ 56-58]:

(a) Constant foot traffic of sex buyers to the trafficker's rented rooms; (b) ESA Management's own employee — specifically, a manager Plaintiff identifies as "Craig," short, Black, light-skinned — was induced by the trafficker to have sex with Plaintiff approximately ten times [ECF No. 1 at ¶¶ 41, 56b]; (c) Plaintiff's trafficker pulled her by her hair in the lobby/check-in area of the hotel in view of staff [ECF No. 1 at ¶ 56c]; (d) Plaintiff walked through common areas visibly drug-impaired (MDMA/Ecstasy), sleep-deprived, malnourished, hygiene-impaired, and in sexually explicit clothing with a visible black eye and bruising on her extremities [ECF No. 1 at ¶¶ 54b, 56d]; (e) Suspicious individuals loitering outside rooms when sex buyers entered [ECF No. 1 at ¶ 56e]; (f) Housekeeping observed or should have observed rooms containing cash, drugs, drug paraphernalia, condoms, and lubricants [ECF No. 1 at ¶ 56f]; (g) Plaintiff's trafficker monitoring hotel hallways and walking the hotel perimeter [ECF No. 1 at ¶ 56g]; (h) Plaintiff soliciting sex buyers in common areas of the hotel [ECF No. 1 at ¶ 56h]; (i) Plaintiff's room

exhibited signs of commercial sex work [ECF No. 1 at ¶ 56i]; (j) Trafficker overtly asserting control over Plaintiff in common areas in view and/or earshot of staff, intermittent screaming and loud noise from rooms heard by staff outside, and overt physical deterioration of Plaintiff [ECF No. 1 at ¶ 56j].

This is not a case of generic "red flags." The Complaint describes a hotel manager personally participating in Plaintiff's trafficking, a trafficker openly assaulting Plaintiff in the hotel lobby, daily interactions between Plaintiff and ESA staff while Plaintiff bore visible signs of abuse, and housekeeping observing rooms filled with drugs and contraband. These facts, accepted as true, establish constructive knowledge — and then some. *See, e.g., A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192-94 (E.D. Pa. 2020) (upholding TVPRA claim where victim exhibited visible injuries and staff heard assaults); *T.P. v. Wyndham Hotels & Resorts, Inc.*, 2022 WL 17363234, at *8 (S.D. Ohio Dec. 1, 2022) (upholding claim where trafficker openly beat plaintiff in front of hotel staff).

Moreover, to the extent ESA argues that Plaintiff's own contemporaneous lack of self-identification as a trafficking victim defeats constructive knowledge, that argument is foreclosed by authority. The Seventh Circuit has held that § 1595's constructive knowledge requirement does not demand proof "that the defendant knew or should have known of the *specific victim* who has brought the civil action." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023). Rather, "[t]o state a claim under Section 1595, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture *generally* has violated Section 1591.

Knowledge of the specific victim, let alone knowledge of her identity, is not required." *Id.* Here, Plaintiff has alleged both: constructive knowledge of trafficking generally at the Subject Hotel over a two-year period, *and* specific, observable signs directed at Plaintiff personally — including a hotel manager who participated in her exploitation approximately ten times.

ESA's most aggressive argument is that Plaintiff's own statement — that she did not perceive herself as a trafficking victim at the time — means she was not trafficked and that ESA therefore could not have constructive knowledge. This argument is legally wrong and factually perverse given the record.

As a matter of law, it is axiomatic in trafficking jurisprudence that victims often do not self-identify as victims during exploitation. Traffickers deliberately employ psychological manipulation, coercion, and trauma bonding to prevent victims from recognizing their own victimization. The TVPRA's definition encompasses force, fraud, *and* coercion — and coercion can operate without the victim's conscious awareness. 18 U.S.C. § 1591(a), (e)(3). ESA's argument would read the statute's coercion prong out of existence by requiring victims to recognize their own victimization in real time — a standard that would gut TVPRA protections for the most psychologically controlled trafficking victims.

Moreover, ESA's constructive knowledge argument collapses entirely in the face of the Complaint's actual allegations. ESA's own employee was having sex with Plaintiff approximately ten times — that employee personally knew Plaintiff was

there and what was happening. [ECF No. 1 at ¶¶ 41, 56b]. The trafficker openly pulled Plaintiff's hair in the lobby in front of hotel staff. [ECF No. 1 at ¶¶ 54g, 56c]. Plaintiff interacted with ESA Management staff "on a daily basis" while visibly bearing signs of physical abuse and drug impairment. [ECF No. 1 at ¶ 58]. ESA's insistence that it lacked constructive knowledge on these facts is not a legal argument — it is a factual defense to be litigated at trial.

Constructive knowledge is an objective standard: whether ESA *should have known* that Plaintiff was being trafficked. Even if Plaintiff herself — due to the effects of coercion and trauma — did not fully process what was happening to her, that does not preclude ESA from constructive knowledge based on the overwhelming, observable signs its own staff witnessed daily and in which at least one manager directly participated.

## F. Plaintiff's Complaint Satisfies Rule 8(a) and Provides Fair Notice to ESA.

Courts must accept Plaintiff's well-pleaded allegations as true and resolve all doubts in Plaintiff's favor. *Twombly*, 550 U.S. at 555. Here, Plaintiff's Complaint pleads all four elements of a TVPRA beneficiary claim with specificity that exceeds Rule 8's requirements: (1) ESA knowingly benefited by receiving room rental payments and Wi-Fi revenues [ECF No. 1 at ¶¶ 24-25, 29-30, 50-51]; (2) from a common undertaking involving risk and potential profit — a hotel operation whose rooms were systematically used for sex trafficking over two years [ECF No. 1 at ¶¶ 36-40]; (3) that violated the TVPRA as to Plaintiff [ECF No. 1 at ¶¶ 7, 23];

and (4) of which ESA had constructive and actual knowledge — including through a manager who personally participated in Plaintiff's exploitation approximately ten times [ECF No. 1 at ¶¶ 41, 52-59]. ESA's Motion to Dismiss should be denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff C.L. respectfully requests that this Court enter an order denying Defendants' Motion to Dismiss in its entirety. ESA's Motion is procedurally barred because it was filed after ESA's Answer (ECF No. 6). On the merits, the Complaint — which alleges that an ESA Management employee participated in Plaintiff's trafficking approximately ten times, that hotel staff were compensated to serve as police lookouts, and that Plaintiff bore visible signs of abuse while interacting with ESA staff daily over two years — more than suffices to state a plausible TVPRA beneficiary claim. In the alternative, should the Court be inclined to grant any portion of the motion, Plaintiff respectfully requests leave to amend.

Dated: March 11, 2026

Respectfully submitted,

/s/ Randolph Janis, Esq.
Randolph Janis, Esq.
*Pro Hace Vice*
DOUGLAS & LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

/s/ Jason Fernandez, Esq.
Greenberg & Bederman LLC
1111 Bonifant Street
Silver Spring, MD 20910
Telephone: (301) 589-2200
jfernandez@gblawyers.com

*Attorneys for Plaintiff C.L.*

## CERTIFICATE OF SERVICE

I hereby certify that on March ~~11~~ 12, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of this electronic filing to all parties and/or counsel of record in this action.

Respectfully Submitted,

/s/ Jason Fernandez, Esq.
Jason Fernandez, Esq.