**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **C.L., AN INDIVIDUAL,** )<br>)<br>  **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ESA P PORTFOLIO MD LLC, *et al.,*** )<br>)<br>  **Defendants.** )<br>)<br>_____ ) | **Civil Case No. 8:25-CV-04291** |

**DEFENDANTS ESA P PORTFOLIO MD LLC AND ESA MANAGEMENT, LLC'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

COME NOW Defendants ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC

(collectively "ESA") and, pursuant to Fed. R. Civ. Pro. 12(b), hereby file this Reply in support of

ESA's Motion to Dismiss Plaintiff's Complaint, showing the Court as follows:

**I.**

**INTRODUCTION**

On February 18, 2026, ESA filed both its Motion to Dismiss (Doc. 7-1) and its Answer to

Plaintiff's Complaint (Doc. 6).  However, ESA inadvertently filed the Answer first.  In her

Opposition to ESA's Motion to Dismiss, Plaintiff contends that ESA's Motion should be denied

and that ESA's mistake of filing the Answer before the Motion to Dismiss constitutes waiver. ***Doc.***

***9-1***, p. 2.   However,   a motion for judgment on   the pleadings is   evaluated   under

the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See **Jacobsen v. Deseret Book***

***Co.***, 287 F.3d 936, 941 n.2 (10th Cir. 2002) ("We use the same standard when evaluating 12(b)(6)

and 12(c) motions.").  Thus, to the extent ESA's mistake in the filing order foreclosed ESA's

ability to move under Rule 12(b)(6), ESA would request that its motion to be treated as motion for judgment on the pleadings, per Rule 12(c).

## II.

## ARGUMENT

In its Motion, ESA sought dismissal of Plaintiff's claim, or part of Plaintiff's claim, for three, primary reasons.  First, ESA argued that any portion of Plaintiff's claim based on events that occurred more than 10 years prior to the filing of her Complaint was untimely under the applicable statute of limitations.  Second, ESA argued that Plaintiff had failed to sufficiently plead two of the necessary elements of any TVPRA claim – i.e. that ESA "participated in a venture" and that ESA possessed constructive noted of Plaintiff's trafficking.  The arguments raised in Plaintiff's Opposition to ESA's Motion are addressed below.

### A.     *The SOL Bars Portions of Plaintiff's TVPRA Claim.*

Responding to ESA's SOL argument, Plaintiff first mischaracterizes ESA's position, incorrectly stating that it "is premised on the false assumption that [her] trafficking claim is confined to events predating December 30, 2015."  Doc. 9-1, p. 4.  ESA was clear, however, that "*the portion* of Plaintiff's claim that relates to trafficking which occurred on or before December 30, 2015, is untimely."  Doc. 7-1, p. 3 (emphasis added).  And, in trying to save the untimely portion of her TVPRA claim, Plaintiff falls back on the three tolling provisions raised in her Complaint, which are addressed below.

### 1.     The discovery rule does not apply.

In its Motion, ESA pointed out that the discovery rule delays the start of the limitations period where victims do not know they have been injured.  *Id.*, p. 4. (citing ***Doe K.R. v. Choice Hotels***, 2025 U.S. Dist. LEXIS 235336, *25 (M.D. Fla. Dec. 3, 2025); ***Gabelli v. Sec. Exch.***

*Comm.*, 568 U.S. 442, 449-50 (2013)).  The discovery rule does *not* delay the limitations period where the victim is ignorant of the fact that her injuries give rise to a legal cause of action.  Id. (citing *Doe K.R.*, 2025 U.S. Dist. LEXIS 235336, *25; *Barnes v. Compass Bank*, 568 F.App'x 743, 744 (11th Cir. 2014); *Day v. City of Philadelphia*, 1995 U.S. Dist. LEXIS 6679, *1 (E.D. Pa. May 18, 1995)).  In her response, Plaintiff falls back on her allegation that she "did not know that she was the victim of human trafficking *as that term is defined by law*."  Doc. 9-1, p. 5 (emphasis added).  Plaintiff's statement, however, simply highlights that hers is a claim that falls outside the discovery rule.  Assuming her allegations are true, Plaintiff would have known that she was being made to engage in commercial sex and that she was being injured as a result.  Whether Plaintiff knew that her injuries *were actionable* is irrelevant.  The discovery rule cannot save the untimely portions of Plaintiff's claim, which is likely why she has failed to cite a single case in support of her argument.

2.      <u>Plaintiff has not properly alleged equitable tolling.</u>

As ESA noted in its brief, equitable tolling requires the Plaintiff to demonstrate (1) that some extraordinary circumstance stood in her way and prevented her from filing her claim, and (2) that, once that barrier was removed, she acted diligently to pursue her rights up to the time she filed. Doc. 7-1, p. 5 (citing *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020); *Sherrod v. Board of St. Lucie County*, 635 F.App'x 667, 673 (11th Cir. 2015)).  And, the steps Plaintiff took in pursuing her claim must be pled with specificity.  Id. (citing *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008)).  In her Opposition, Plaintiff does not dispute the law.  Rather, she simply argues that this is an issue for the jury.  Doc. 9-1, pp. 6-7.  However, Plaintiff's allegations as to the barrier that stood in her way are vague at best – she simply claims she was subjected to abuse and her freedom was restricted until 2017.  Moreover, she makes no effort at all to explain how she

diligently pursued her claims for the ***eight years*** between escaping her trafficker and filing her complaint.  The doctrine of equitable tolling simply does not save a claim that lacks such supporting facts, and the Court does not have the luxury of ignoring these obvious shortcomings in Plaintiff's pleadings.  *See **Doe v. G6 Hosp., LLC***,  2025 U.S. Dist. LEXIS 268894, *5 (W.D. Wash. June 12, 2025) ("Because plaintiff has not alleged facts from which one could infer that, despite her diligence, an obstacle or impediment prevented her from timely filing her claims following her escape from her trafficker, the Court finds that equitable tolling principles do not extend the limitations period.")

       3.      <u>The continuing violation doctrine is inapplicable to TVPRA claims.</u>

In its Motion, ESA argued that the continuing violation doctrine could not save the untimely portions of Plaintiff's claim, based upon the Supreme Court's analysis of the doctrine in the employment discrimination context (*i.e.* finding the doctrine applied since such claims are not based upon discrete acts).  Doc. 7-1 p. 7 (internal cites omitted).  In her Opposition, Plaintiff skips any analysis of the issue, noting only that some districts have applied the continuing violation doctrine to TVPRA claims.  ***Doc. 9-1***, p. 7.  Then she asks this Court to pass on the ruling on the issue.  ***Id.***  The applicability of the doctrine, however, is properly before this Court, and Plaintiff's invitation to just ignore the topic should be rejected.  Plaintiff's failure to address this issue in any detail is a tacit admission that "the better side of the argument is that TVPRA claims are not amenable to the continuing tort doctrine."  ***Doe v. Six Continents Hotels Inc.***, 2025 U.S. Dist. LEXIS 122938, *16 (C.D. Cal. June 26, 2025).  "[C]ourts which have applied the continuing tort doctrine to TVPRA claims have not addressed important limitations on that doctrine in the Ninth Circuit and at the Supreme Court."  ***Id.*** (*citing **Doe v. G6 Hosp., LLC***, 2025 U.S. Dist. LEXIS 76546 (W.D. Wash. Apr. 22, 2025)).  "[E]ach discrete act of sex trafficking at [a hotel] constitutes

a discrete, actionable tort", which is "why the continuing [violation] doctrine is not appliable to TVPRA claims." *Id.*, **18-19 (internal cites omitted).  Plaintiff offers no argument to the contrary.

**B.      *Plaintiff Failed to Sufficiently Allege "Participation in a Venture".***

In its Motion, ESA argued that Plaintiff failed to sufficiently plead the "participation in a venture" and constructive knowledge elements of her TVPRA claim.  ***Doc. 7-1***, pp. 9-14.  In regard to the participation in a venture element, ESA pointed out that, aside from allegations made on information and belief, Plaintiff had not alleged any relationship between her trafficker and ESA.[1] *Id.*, pp. 9-11.  Plaintiff offers several arguments in response, which are addressed in order below.

     1.     <u>Plaintiff's allegation that someone she believes was an ESA employee was one of her "Johns" does not establish participation in a venture.</u>

First, Plaintiff suggests that her Complaint included allegations "that a named, specifically described ESA Management employee personally participated in Plaintiff's trafficking …"  ***Doc. 9-1***, pp. 8-9.  However, that is not what Plaintiff alleged.  What Plaintiff ***did*** allege was that she was "induced", by her trafficker, to have sex with someone who called himself "Craig", who she "perceived to be a manager" at the ESA hotel.  ***Doc. 1***, ¶¶ 41, 56(b).  Plaintiff does not allege that this person was an ESA manager – only that she ***believed*** he was – and she provides no underlying facts supporting her belief.  This contention is therefore conclusory.[2]  Moreover, Plaintiff does not plead any connection between Craig and her trafficker; she does not even contend that Craig and

---

[1] As noted in ESA's Motion, a plaintiff must, at the very least, allege facts sufficient to demonstrate a continuous business relationship, akin to a "tacit agreement", between the defendant and the trafficker.  ***Doc. 7-1***, p. 10 (*citing* ***G.G. v. Salesforce.com, Inc.***, 76 F.4th 544, 559 (7th Cir. 2023); ***see also J.B. v. G6 Hospitality, LLC***, 2020 U.S. Dist. LEXIS 151213, *26 (N.D. Cal. August 20, 2020)).

[2] Allegations made on information and belief must be supported by some allegation of fact, otherwise they "veer away from supporting plausible inferences" and do not show a "plausible" claim for relief.  ***Va. Transformer Corp. v. Ebbert***, 2019 U.S. Dist. LEXIS 52441, *10 (W.D. Va. March 28, 2019).

her trafficker ever even spoke.  The only personal connection alleged in Plaintiff's Complaint was that between Craig *and herself*.  As such, even if the averments that Craig was a hotel manager were not conclusory, they still do not establish any relationship between ESA and Plaintiff's trafficker.

    2.    <u>Unsupported allegations that ESA employees might have served as "lookouts" do not establish participation in a venture.</u>

Second, Plaintiff points to her allegation that her trafficker "befriended and/or compensated" ESA staff to "act as police lookouts and informants." ***Doc. 9-1***, p. 9.  Plaintiff ignores, however, that this allegation is made "upon information and belief". ***Doc. 1***, ¶ 33.  Again, Plaintiff's Complaint contains no averments to support her belief, and unsupported allegations of belief are insufficient to state a plausible claim for relief. ***See***, fn 2.

    3.    <u>Plaintiff must allege that ESA participated in a venture with her trafficker.</u>

Next, Plaintiff argues that ESA's position incorrectly "require[s] Plaintiff allege participation in a dedicated sex-trafficking venture – as opposed to any venture …" ***Doc. 9-1***, p. 9.  Plaintiff contends that, since ESA operates a hotel and a hotel is a commercial venture, she has satisfied the element. ***Id.***  Plaintiff, however, misstates ESA's position.  In its Motion, ESA analyzed different ways courts have defined participation in a venture and noted that the element requires, at the very least, allegations sufficient to show a continuous relationship or tacit agreement between the trafficker and the defendant. *See*, fn 1.  While Plaintiff is correct that a commercial venture ***can*** satisfy the "participation in a venture" element, she misses the point that, no matter what venture is alleged, it is the venture must have committed ***the criminal offense*** of trafficking; thus, the venture must include Plaintiff's trafficker.

This rule is made plain by the opinion relied upon (but not analyzed) by Plaintiff – ***G.G. v. Salesforce.com, Inc.***, 76 F.4th 544 (7th Cir. 2023). ***Doc. 9-1***, p. 9.  In ***G.G.***, the plaintiff claimed

to have been trafficked by a man who had forced her into commercial sex and used the Backpage.com website to advertise her. In addition, however, she also claimed that Backpage.com itself had committed criminal sex-trafficking violations against her and others. 76 F.4th p. 548. In other words, the *G.G.* plaintiff alleged she had *two* traffickers – her "street-level trafficker" and Backpage. *Id.*, p. 552.[3]

Of course, G.G. did not sue Backpage – she sued Salesforce. And, in reviewing whether the plaintiff had properly alleged a venture, the Seventh Circuit noted that the TVPRA does not limit a venture to "a primarily sex-trafficking venture" and that a venture "can be a 'commercial venture' like running or expanding a business." *Id.*, p. 554. However, the Court went on to hold that the venture nevertheless must have criminally violated the TVPRA, and there was no dispute in *G.G.* that Backpage had committed "multiple" such violations. *Id.*, p. 553-54. So, while the venture between Salesforce and Backpage was a commercial business relationship and not a "primarily sex-trafficking venture", Salesforce was nevertheless in a venture with another (*i.e.* Backpage) who had criminally violated the TVPRA and was one of the plaintiff's traffickers. *Id.*[4]

It is important to note that the *G.G.* Court addressed participation separately from venture. The plaintiff alleged that Salesforce had participated in the venture with Backpage by providing

---

[3] "Salesforce seems to assume that G.G. had only one trafficker – the street-level trafficker who physically forced her into prostitution. But that person was not G.G's sole sex trafficker under Section 1591. According to the allegations in plaintiffs' complaint, Backpage was also a sex trafficker. Contrary to Salesforces' assumptions, therefore, Salesforce was not one step removed from G.G.'s traffickers. It was in a direct, prolonged, and supportive contractual relationship with one of those sex traffickers – Backpage." *G.G.*, 76 F.4th at p. 561.

[4] "Plaintiffs have sufficiently alleged the existence of a venture that violated Section 1591. The text of Section 1595 does not say 'sex-trafficking venture,' but only 'venture.' In other words, 'venture' is not described in criminal terms. Indeed, it would make little sense if it did. The language that follows, 'which … has engaged in an act in violation of this chapter,' does that work, requiring the venture's criminality." *G.G.*, 76 F.4th at 553-54.

Backpage with software, marketing technology, and personalized operational support. Salesforce argued that the plaintiff had not properly alleged participation, because she had not connected Salesforce's support directly to her trafficking. *Id.*, p. 561. The Seventh Circuit found that direct participation in the actual trafficking is not required to show participation in the venture. *Id.*, pp. 559-61. What is required, however, is that the defendant provide some form of culpable support or assistance to the trafficker, which can be done "by showing a continuous business relationship between the participants and the trafficker". *Id.*, pp. 559-60. Since Backpage was alleged to have been the plaintiff's trafficker, the Court found that the plaintiff had plausibly alleged a continuous business relationship with her trafficker, via the allegations of support and assistance provided by Salesforce to Backpage. *Id.*, p. 559.

Thus, Plaintiff's contention that she can properly plead participation in a venture without contending that ESA was in a venture with her trafficker should be summarily rejected. And, as noted in ESA's Motion, Plaintiff's Complaint contains no factual allegations of ESA interacting with her trafficker. She never claims that ESA colluded with – or even interacted with – ESA staff. She does not even allege that her trafficker rented rooms; rather, she contends the rooms were rented "at the direction of her trafficker". *Doc. 1*, ¶¶ 24, 25, 42, 43, 44, 45, 50, 51. ESA cannot participate in a venture with, have a continuous business relationship with, or enter into a tacit agreement with, someone it has not met and/or has not conducted business with.

    4.    <u>Plaintiff's allegations of "commercial dealings" between ESA and her trafficker lack supporting factual averments</u>.

Changing gears, Plaintiff next argues that she alleged "multi-year, repeated commercial dealings between her trafficker and ESA" through room rentals and Wi-Fi charges, which she claims is enough to demonstrate a "continuous business relationship" or "tacit agreement" between ESA and her trafficker. *Doc. 9-1*, p. 10. But, even the allegations specifically mentioned by

Plaintiff accentuate the absence of any such relationship or agreement.  In Paragraphs 24-25, 42-45, 50-51, for example, Plaintiff notes that ESA did not rent rooms directly to her trafficker, but, rather, that the rooms were rented "at the direction of the trafficker".  At Paragraphs 48-49, Plaintiff is even more clear that the rooms were not rented to her trafficker, but to other, unidentified "individuals".  Plaintiff cannot satisfy her pleading allegations by invoking "magic words" such as "participation in a venture".  Rather, she must provide factual averments that demonstrate participation in a venture, and, here, she simply has not.

     5.     <u>Plaintiff's franchisor/franchisee allegations are irrelevant.</u>

Finally, Plaintiff argues that, since ESA is alleged to have operated the hotel, she has averred that ESA controlled "training, staffing, and security protocols" and "[t]he knowledge of on-site staff – including Craig – is imputed to both ESA entities …" ***Doc. 9-1***, p. 10.  For the purposes of this Motion, however, ESA is not disputing that it operated the hotel or employed hotel staff.  Plaintiff's allegations are deficient, based on the reasons set forth above, and not based upon any argument that ESA is somehow removed from the operation of the hotel.

**C.    *Plaintiff Failed to Sufficiently Allege Constructive Knowledge.***

In its Motion, ESA noted that trafficking and prostitution are not the same thing, and that the TVPRA requires allegations sufficient to show the defendant knew or should have known that the plaintiff was being ***trafficked***, as opposed to engaging in prostitution.  ***Doc. 7-1***, pp. 11-13.  In her Opposition, Plaintiff does not disagree with this premise.  Yet, she proceeds to guide the Court through her various allegations, all of which are incapable of providing any notice that Plaintiff was being forced to engage in commercial sex.  ***Doc. 9-1***, pp. 12-13.

For example, Plaintiff references "Craig" once more, but the related allegations stop far short of demonstrating that his person observed Plaintiff being forced or compelled to partake in

commercial sex with him. ***Doc. 1***, ¶ 41. Likewise, Plaintiff's allegations that she wore explicit clothing, had tools of the sex trade in her room, used drugs, solicited sex from men on the property, and had a large number of male visitors simply do not provide notice of trafficking. ***Id.***, ¶ 54. As noted in ESA's Motion, and ignored in Plaintiff's opposition, even the allegations that address Plaintiff's abuse at the hands of her trafficker lack factual averments that anyone from ESA actually witnessed said abuse. Plaintiff contends that, on one occasion, her trafficker pulled her hair "in view of staff", but she does not actually contend that staff witnessed his incident. ***Id.***, ¶ 54(g). Elsewhere, Plaintiff claims that she bore bruises, but she does not otherwise state that anyone from ESA saw her trafficker give her said bruises or otherwise mistreat her. ***Id.***, ¶ 54(h). Plaintiff alleges that her trafficker "assert[ed] control" over her common areas, but, again, she only contends that this was "in view" or in "earshot" of staff – not that it was seen or heard. ***Id.*** And, her allegation that there was "intermittent screaming and loud noise" from her room, likewise contains no averment that these disturbances were heard by ESA staff. ***Id.***

Trafficking occurs when someone is made to engage in commercial sex via force, threats of force, fraud or coercion. 18 U.S.C. 1591(a).[5] Plaintiff simply does not allege that ESA witnessed any force, threats of force, fraud or coercion being employed against Plaintiff to compel her to engage in commercial sex, and, therefore, Plaintiff has not sufficiently alleged the final element of her claim.

## III.

## <u>CONCLUSION</u>

For the foregoing reasons, ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC respectfully request this Court enter an Order GRANTING their Rule 12(b)(6) Motion to Dismiss

---

[5] "Coercion" means threats of serious harm or physical restraint, a plan/scheme to cause someone to believe that harm or physical restraint will be used, or the abuse or threatened abuse of the legal process. 18 U.S.C. 1591(e)(2).

(or Rule 12(c) Motion for Judgment on the Pleadings) for failure to state a claim and DISMISSING

Plaintiff's Complaint with prejudice.

Dated this 6th day of April, 2026.

FRANKLIN & PROKOPIK

/s/ Dillon A. Swensen
Andrew T. Stephenson, Esq.
Bar No. 26504
Dillon A. Swensen, Esq.
Bar No. 31347

*Attorneys for ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC*

2 N. Charles St, Suite 600
Baltimore, MD  21202
(404) 752-8700
astephenson@fandpnet.com
dswensen@fandpnet.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing document has been electronically served via CM/ECF to the following:

Jason Fernandez, Esq.
Greenberg & Bederman LLC
1111 Bonifant Street
Silver Spring, MD 20910
(301) 589-2200
jfernandez@gblawyers.com

Randolph Janis (PHV)
Douglas and London, P.C.
1 State Street, 35th Floor
New York, NY 10004
(212) 566-7500
rjanis@douglasandlondon.com

*Attorneys for Plaintiff*

This 6th day of April, 2026.

FRANKLIN & PROKOPIK

*/s/ Andrew T. Stephenson*
Andrew T. Stephenson, Esq.
Bar No. 26504
Dillon A. Swensen, Esq.
Bar No. 31347

*Attorneys for ESA P PORTFOLIO MD LLC and ESA MANAGEMENT, LLC*

2 N. Charles St, Suite 600
Baltimore, MD  21202
(404) 752-8700
astephenson@fandpnet.com
dswensen@fandpnet.com