**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| C.L., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:25-cv-04291-PX |
| ESA P PORTFOLIO MD LLC et al., | | |
| | * | |
| Defendants. | | |
| | *** | |

**MEMORANDUM OPINION**

Pending in this human trafficking case is a motion to dismiss filed by Defendants ESA P Portfolio MD LLC and ESA Management, LLC (collectively "ESA"). ECF No. 7. The issues are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion is DENIED.

## I.    Background

Plaintiff C.L., proceeding under a pseudonym, was a victim of sex trafficking between 2015 and 2017. ECF No. 1 ¶¶ 1, 7. Her trafficker operated his business out of the Extended Stay America in Gaithersburg, Maryland ("the Hotel"), a property that ESA P Portfolio MD LLC owned and managed through its subsidiary, ESA Management, LLC. *Id.* ¶¶ 2, 5–6. C.L.'s trafficker routinely rented rooms for C.L. and others to perform sex acts for money. *Id.* ¶¶ 24–25, 28–30. C.L.'s trafficker also paid Hotel staff to act as police lookouts and informants. *Id.* ¶ 33. And on as many as ten occasions, the trafficker forced C.L. to have sex with "Craig," a Hotel manager. *Id.* ¶ 41.

C.L. also frequented the Hotel common areas wearing sexually suggestive or revealing clothes, often high, sleep deprived, and dirty, with visible injuries such as a black eye and bruises

on her arms and legs. *Id.* ¶ 54. C.L. would solicit patrons for paid sex, at the trafficker's direction. *Id.* One time, also in the common area, the trafficker grew angry with C.L. because she had not answered her phone, pulling her hair while the Hotel staff watched. *Id.*

More generally, the Hotel had "constant foot traffic of sex buyers to the trafficker's rented rooms" and "suspicious individuals loitering outside the hotel rooms when a sex buyer would enter." *Id.* C.L.'s trafficker sometimes monitored the hallway or walked the perimeter of the Hotel. *Id.* The rooms the trafficker rented often had, in open view, cash, drugs, drug paraphernalia, condoms, and lubricants. *Id.* ¶ 56. Occasionally, Hotel staff could hear "screaming" or loud noises coming from the room where C.L. stayed. *Id.* ¶ 54.

Several years later, on December 30, 2025, C.L. sued ESA for a violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA"). ECF No. 1. ESA, in turn, both answered the Complaint and moved to dismiss the action as insufficiently pleaded and as time barred. ECF Nos. 6, 7. Neither argument succeeds.

## II.     Analysis

### A.     Statute of Limitations

ESA contends that events preceding December 30, 2015, are time barred and must be dismissed. ECF No. 7-1 at 2–3. A TVPRA claim must be brought within "10 years after the cause of action arose." 18 U.S.C. § 1595(c); *see Bay Area Laundry and Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). The applicable statute of limitations begins to run once a claim "accrues," or when the plaintiff knows or has reason to know about the injury that gives rise to the action. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975).

The parties agree that a straightforward application of the ten-year limitations provision

would bar a claim premised on acts occurring before December 30, 2015.  ECF No. 7-1 at 3; ECF No. 9-1 at 4–5.  However, C.L. contends that the continuing violations doctrine necessarily extends the limitations period.  ECF No. 9-1 at 7–8.  The continuing violations doctrine applies where the alleged wrongful act "did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'"  *A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011).

Statute of limitations is an affirmative defense that must be pleaded in the answer and proven by the defendant at trial.  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007).  Customarily, a limitations defense is fact intensive, and thus, more appropriately considered on a motion for summary judgment.  *See CSX Transp., Inc. v. Gilkison*, 406 Fed.Appx. 723, 730 (4th Cir. 2010).  However, limitations may be resolved on a motion to dismiss only when "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

The Complaint does not conclusively determine the limitations question.  The Complaint pleads an ongoing course of sex trafficking acts involving C.L. that took place between 2015 and 2017.  ECF No. 1 ¶¶ 74–76.  When viewed most favorably to C.L., the trafficking, and ESA's knowledge and participation in the same, extends into the ten-year limitations period.  This is sufficient to withstand dismissal on limitations grounds, for now.  In discovery, the parties can suss out the nature, scope, and duration of the trafficking scheme, which will help determine what, if any portion, of the trafficking offenses are time barred and if so, whether the continuing

violations doctrine extends limitations. [1]  At this stage, however, the Complaint simply does not conclusively support dismissal on limitations grounds.  Thus, the motion is denied.

### B.       Sufficiency of the TVPRA Claim

Turning next to whether the claim is sufficiently pleaded, ESA styles its motion as one to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 7.  But because ESA also answered the Complaint, the Court must construe the motion as one for judgment on the pleadings brought pursuant to Rule 12(c).  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Nonetheless, a motion for judgment on the pleadings is evaluated under the same 12(b)(6) standard.  *Id.*  Such a motion tests the sufficiency of the complaint.  *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court must accept "the well-pled allegations of the complaint as true" and most favorably to the nonmovant.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The Court, however, need not credit naked legal conclusions devoid of factual support.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Rather, the complaint's factual allegations "must be enough to raise a right to relief above the

---

[1] C.L.'s alternative arguments – equitable tolling and the discovery rule – likely do not extend limitations.  ECF No. 1 ¶¶ 67–73.  Equitable tolling forgives untimely filed actions where the plaintiff shows that, despite her diligence in pursuing the claims, extraordinary circumstances prevented timely filing.  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  C.L. points to her trafficker's control over her as the "extraordinary circumstance" that obstructed her timely filing.  ECF No. 1 ¶¶ 71–72.  But this only explains why she had not filed suit before 2017, not for the eight years thereafter.  Likewise, the discovery rule seems inapt.  The discovery rule extends limitations where a plaintiff could not have discovered her *injuries* in time to bring the claim, not when the plaintiff discovers the cause of action, as C.L. suggests.  *Gabelli v. Sec. Exch. Comm.*, 568 U.S. 442, 450 (2013).  C.L. clearly *knew* she was injured at the time she was forced to engage in sex-for-hire.  *Cf. Doe K.R. v. Choice Hotels*, Case No. 6:23-cv-1012-JSS-LHP, 2025 WL 3469855, at *8–9 (M.D. Fla. Dec. 3, 2025); *see also J.M. v. Red Roof Franchising*, LLC, No. 2:24-cv-03384-KJM-JDP, 2025 WL 2410941, at *4 (E.D. Cal. Aug. 20, 2025).  Thus, the discovery rule and equitable tolling are equally unhelpful to C.L.

speculative level." *Twombly*, 550 U.S. at 555.

C.L. avers a TVPRA "beneficiary" theory of liability as to ESA.  18 U.S.C. § 1595.  The TVPRA allows for a private cause of action against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter . . . ."  18 U.S.C. § 1595(a).  To state a claim for beneficiary liability, the Complaint must include facts to make plausible that the defendant "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff."  *Doe v. Wyndham Hotels & Resorts, Inc.*, Case No. 2:24-cv-204, 2025 WL 725268, at *2 (E.D. Va. Mar. 6, 2025) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021)).

ESA challenges the sufficiency of the claim only on the second and fourth elements.  ECF No. 7-1 at 9, 11.  As to the second element – participation in a joint venture – ESA argues that the Complaint fails to allege sufficiently particularized dealings between ESA and C.L.'s trafficker to sustain the claim.  ECF No. 7-1 at 11.  While the Fourth Circuit has not yet addressed what is meant by "participation in a venture" under § 1595(a), a growing Circuit split has emerged.  *See A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268 (11th Cir. 2026) (collecting cases).  The majority of Circuits conclude that the plaintiff satisfies the "joint venture" element if some facts reflect the defendant hotel's knowledge of the sex trafficking venture alongside its provision of "standard commercial services."  *See, e.g., id.* at 1269; *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023).  The D.C. and Eleventh Circuits, by contrast, require proof of "something more than engaging in an ordinary buyer-seller transaction."  *Doe 1 v. Apple Inc.*, 96 F.4th 403,

415 (D.C. Cir. 2024); *see also Northbrook*, 171 F.4th at 1268–9.  This "something more" standard offers "not very illuminating guidance," by the Eleventh Circuit's own admission.  *Northbrook*, 171 F.4th at 1269.  The standard is necessarily fact dependent, demanding evidence that the defendant beneficiary gave *some* assistance to the sex trafficking business.  *Id.*

*Northbrook* illustrates the "something more" standard.  There, the Eleventh Circuit reversed a grant of summary judgment because the plaintiff had adduced evidence that hotel staff would talk with the traffickers for 15 to 20 minutes a day and, on occasion, would unlock hotel rooms for the sex workers upon request.  *Id.* at 1271.  The court concluded a reasonable juror could find a joint venture principally because hotel staff let "two seventeen-year-old girls dressed provocatively who were loitering in common areas and purchasing condoms in the lobby, back into a room even though they produced no identification and were not listed on the room reservation."  *Id.*  Such "personalized support" went beyond the mere hotel-merchant relationship and demonstrated facts from which a reasonable juror could conclude the hotel engaged in culpable assistance of the trafficking operation.  *Id; see also Salesforce*, 76 F.4th at 559 (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)) (finding that Salesforce participated in a venture with Backpage.com, a known sex trafficking platform, because it provided business advice and specialized software); *J.K. v. Ramada Worldwide, Inc.*, Civ. No. 1:23-CV-108-TWT, 2023 WL 5621913, at *3 (N.D. Ga. Aug. 30, 2023) (holding the hotel participated in a venture because the hotel staff rigged a side entry door for sex trafficker's clients).

When viewing the Complaint facts most favorably to C.L., ESA offered sufficiently "personalized support" and "culpable assistance" under the "something more" standard. *Northbrook*, 171 F.4th at 1269.  While routinely providing rooms for rent, ESA staff turned a blind eye to C.L.'s obviously compromised appearance, the abuse she suffered at the sex trafficker's

hands, and the open view evidence of the sex trade in the hotel rooms.  ECF No. 1 ¶¶ 42–43, 54.

Against this backdrop, ESA staff critically also acted as police lookouts and informants for the sex

trafficker.  *Id.* ¶ 33; ECF No. 9-1 at 9; *see S.G. v. Coastal Hosp. Assocs., LLC*, Case No. 2:25-cv-

274, 2025 WL 3243431, at *3 (E.D. Va. Nov. 20, 2025) (finding participation in a venture where

employees facilitated the trafficker's conduct and received $200 in exchange).  And Hotel manager

"Craig" received sex services from C.L., which permits the plausible inference that Craig used his

position of authority and his knowledge of the trafficker's activities to facilitate the venture's

continued success.  *See Coastal Hosp. Assocs.*, 2025 WL 3243431, at *3.  This is sufficient at the

motion to dismiss stage to make plausible that ESA offered something more to the sex trafficker

than the ordinary provision of hotel rooms.  *See Apple Inc.*, 96 F.4th at 415; *see also Coastal Hosp.
Assocs.*, 2025 WL 3243431, at *3.

Next, as to the "knowledge" element, ESA argues that no facts make plausible that its staff

had actual or constructive knowledge that C.L. was a victim of sex trafficking.  ECF No. 7-1 at

12–13.  This element requires some proof that the defendant "knew or should have known" about

the sex trafficking venture when viewed from the perspective of "a reasonable, diligent hotel

operator."  *Northbrook*, 171 F.4th at 1273; *see also Salesforce*, 76 F.4th at n. 9.  A victim's unusual

appearance and behavior, or violent interactions with the sex trafficker in the common areas, puts

a reasonably diligent hotel operator on such notice.  *A.B. v. Marriott Int. Inc.*, 455 F.Supp.3d 171,

193 (E.D. Pa. 2020) (finding constructive knowledge because, among other signs, there was a

"voluminous and obvious" stream of men entering the plaintiff's room and it was littered with

broken objects and sex paraphernalia); *see also T.P. v. Wyndham Hotels & Resorts, Inc.*, Civ. No.

2:21-cv-04933, 2022 WL 17363234, at *1, *8 (S.D. Ohio Dec. 1, 2022) (finding constructive

knowledge because, among other signs, the plaintiff was visibly bruised and beaten in front of staff

and there were numerous instances of unusual behavior, including excessive requests for towels and signs of drug use). Offering personalized support to a trafficker also establishes constructive knowledge because it gives rise to an inference that the hotel understood the nature of the trafficker's activities. *See Salesforce*, 76 F.4th at 563; *Coastal Hosp. Assocs.*, 2025 WL 3243431, at *4. So too does staff having nonconsensual sex with a trafficking victim. *T.P. v. Wyndham*, 2022 WL 17363234, at *8–9.

The Complaint easily makes this element plausible. Indeed, C.L.'s forced sex transactions with Craig alone put ESA on notice that C.L. was being used as a pawn in a sex-for-hire scheme. ECF No. 1 ¶ 41; *T.P. v. Wyndham*, 2022 WL 17363234, at *8–9. Add to this, ESA's staff had worked as police lookouts and witnessed C.L.'s compromised appearance. *See Coastal Hosp. Assocs.*, 2025 WL 3243431, at *4; *see also Northbrook*, 171 F.4th at 1273; *Marriott*, 455 F.Supp.3d at 193; *T.P. v. Wyndham*, 2022 WL 17363234, at *1, *8. From this, a "reasonabl[y] diligent hotel operator" would have recognized this as a sex trafficking venture operating on the premises. *Northbrook*, 171 F.4th at 1273. Because the Complaint facts make plausible the claim, dismissal is denied.

## III.    Conclusion

Defendants ESA P Portfolio MD LLC and ESA Management, LLC's motion to dismiss the Complaint, construed as one for judgment on the pleadings, is denied.

A separate order follows.


July 6, 2026
Date

/s/
Paula Xinis
United States District Judge